STATE of Missouri, Respondent,

v.

Vincent X. LEE, Appellant.

No. 61876.

Supreme Court of Missouri,
Division One.

June 8, 1981.

Rehearing Denied July 14, 1981.

Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Vincent X. Lee was previously tried and convicted of two counts of first degree mur-der (§ 559.010, RSMo 1969, since repealed) and two counts of first degree robbery (§ 560.120, RSMo 1969, since repealed) and received four concurrent terms of life imprisonment. Appellant's convictions were affirmed on appeal, *State v. Lee*, 556 S.W.2d 25 (Mo. banc 1977), but this decision was vacated by the United States Supreme Court because of the underrepresentation of women in the jury venire. *Lee v. Missouri*, 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979). Upon the remand of this cause, a new indictment charging the same crimes was filed against appellant. Following a change of venue from Jackson County, a jury in the Circuit Court of Greene County found the defendant guilty on all four counts. The trial court, under the Second Offender Act, fixed the punishment at four concurrent life terms. This appeal followed.

This case arose out of the robbery and shooting to death of a 7-Eleven store employee and a store customer in Independence, Missouri, on June 15, 1975. The basic facts appear in the prior appeal and will not be here repeated, there being no challenge to the sufficiency of the evidence.

Appellant's first assignment of error is based upon the trial court's excusing a venire person upon voir dire. This claim of error arose from the trial court's questioning of the panel members, in which he asked whether any of the members of the panel were disqualified for statutory reasons (§ 494.020.1, RSMo 1978), including conviction for a felony without restoration of civil rights or conviction for a misdemeanor involving moral turpitude. One panel member responded that she was "caught shoplifting once" two years earlier.

The court stated: "_____ _____ No. 39 was convicted of shoplifting. Do you have any objections?

"MR. STERLING (defense counsel): I object to that. She has not had her civil rights restored.

"THE COURT: She said she was convicted two years ago.

"MR. STERLING: I want my objection noted. It has been overruled.

"THE COURT: Overruled."

The court then struck venireperson No. 39 from the jury panel.

In his motion for new trial, the error asserted in the trial court's ruling was in the trial court's striking the venireperson from the panel "without permitting counsel to inquire as to the nature of a conviction, if any." In this Court, the assignment is that the court erred because the venireperson's response that she had been "caught shoplifting" did not demonstrate that she had been convicted of a felony or of a misdemeanor involving moral turpitude.

The recital of the occurrence in the trial court shows clearly that no such objection was raised in that court. The objection voiced—"She has not had her civil rights restored"—, whatever its meaning, in no manner advised the trial court that defense counsel did not consider the response—"I was caught shoplifting"—sufficient to justify the trial court's conclusion that she had been convicted for that offense. Defense counsel proposed no further inquiry in that

regard and there was obviously no refusal on the part of the trial court to permit such an inquiry.

The claim of error now asserted was not raised in the trial court and affords no basis for relief in this Court. *State v. Jones*, 515 S.W.2d 504, 506[3, 4] (Mo.1974); *State v. Barker*, 572 S.W.2d 185, 187[5] (Mo.App. 1978).

■ Appellant's second assignment of error relates to the seizure by police and admission into evidence of a receipt for the purchase of motor oil from Alco Discount Store.

Appellant was connected to the incident at the 7-Eleven store by the unusual appearance of his automobile, observed at the store parking lot and in the vicinity of the store. Police traced ownership of a vehicle matching the description of the vehicle to appellant and, finding the vehicle at appellant's place of employment the day following the robbery and killings, arrested appellant as he drove away. The automobile was impounded by police and a search warrant obtained for a search of the vehicle, authorizing the search for and seizure of a .22 caliber weapon, $219.73 of 7-Eleven Store's money and the billfold of the murdered customer.

The officer who executed the search warrant made a return, inventorying the property taken under the warrant as a .22 caliber Magnum Super X shell casing, a ring, an envelope full of sweepings and "1 Alco Discount Store receipt."

Appellant filed a motion to suppress the use of the receipt in evidence on the grounds that it was not among the items authorized to be seized under the search warrant and that the officer who seized it had no probable cause to believe that it constituted evidence relating to the matter under investigation.

A hearing was held on the motion. Sergeant Gaiser who conducted the search testified that ballistics tests had shown that a .22 caliber Magnum was the weapon used in the killings and that police were attempting to find such a weapon. No such weapon was found in the automobile but in the trunk near a carton of oil, police found the receipt from Alco Discount Store in Leavenworth, Kansas, for the purchase of the oil. Sergeant Gaiser testified that he had been in that store on several occasions and had observed a display of weapons offered for sale at that store. Acting upon what he characterized as "a hunch, knowing what Alco was," he directed other officers to go to that store and make inquiry about the sale of a weapon of the type involved to appellant. The officers did so and were informed by an employee of the store that appellant had participated in the purchase of a .22 Magnum handgun from the store. (Appellant's motion was also directed at suppression of the clerk's testimony on the grounds that it was the result of exploitation of the illegal seizure of the Alco receipt. The overruling of that portion of the motion and the subsequent admission of the clerk's testimony is also the subject of assignment of error in this Court.)

In *State v. Clark*, 592 S.W.2d 709, 713 (Mo. banc 1979), the court applied the following test for determining the legality of the seizure in the course of execution of a search warrant, of property not described in the warrant. "It is necessary that (1) the evidence be observed in plain view while the officer is in a place where he has a right to be, (2) the discovery of the evidence be inadvertent and (3) it is apparent to the police that they have evidence before them." The existence of the first two elements in this case in not questioned. The question is, as stated in *Clark*, whether the Alco receipt "was evidence relating to criminal activity."

*Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967), states the test as follows:

"There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular

apprehension or conviction. In so doing, consideration of police purposes will be required. Cf. *Kremen v. United States,* 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876."

Based upon his familiarity with the Alco store, Sergeant Gaiser had cause to believe that the Alco receipt might lead police to the source of the weapon or ammunition employed in the crimes under investigation and thereby aid in the conviction of appellant therefor.

Appellant points to cases requiring that the officer "immediately" identify the object seized as evidence. See *United States v. Wilson,* 524 F.2d 595, 598–599[5] (8th Cir. 1975); *United States v. Clark,* 531 F.2d 928, 932[3, 4] (8th Cir. 1976). Such requirement is aimed at avoiding inventory searches in which the officers seize everything in sight and subsequently attempt to attach evidentiary significance to the seized property.

Obviously, there was no inventory search involved in this case. Certainly, the officer's recognition of the significance of the Alco receipt was as "immediate" as that of the officers involved in *United States v. Golay,* 502 F.2d 182, 184–186[1, 2] (8th Cir. 1974). In Golay, officers with a search warrant directed at an item of stolen jewelry, seized an attache case containing $9,000 in cash, a pistol and marijuana, none of which "was known at the time of the seizure to be connected with any offense." 502 F.2d 184. However, the cash which was in bank wrappers and the pistol were used to connect the defendant with an extortion and were introduced in evidence at his trial on that charge. In rejecting the defendant's claim of illegal seizure, the court stated (502 F.2d 185):

"The defendant urges, however, that the seizure was illegal because the items seized were not contraband or evidence of a crime committed in the officers' presence. It is true that the record before us does not so establish. But defendant is in error in suggesting that the legality of seizure under the plain view exception is so limited. The defendant had been identified by one sharing in the proceeds of the burglary as the perpetrator thereof.

The police had been informed of the property stolen. The search was authorized after judicial consideration. In the execution thereof large sums of money still in the bank wrappers and a gun were discovered. It is conceivable that the monies were the proceeds of honest toil and the gun employed for target practice only. But the circumstances presented, as we put it in *United States v. Jones,* 452 F.2d 884, 888 (8th Cir. 1971), would have 'reasonably alerted the police officers to the fact that [the defendant] may have been involved in some other illegal activity,' the fruits of which were before them. There was thus probable cause to establish that 'nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior.' "

Having concluded that the seizure of the Alco receipt was not illegal, there is no need to pursue appellant's further argument that the testimony of the Alco clerk should have been suppressed because of the taint of the illegal seizure of the receipt.

▪ Appellant also contends that the clerk's testimony should have been suppressed because his identification of appellant as a participant in the purchase of a .22 caliber Magnum at the Alco store was the result impermissibly suggestive identification procedures employed by police. His major reliance is upon the fact that the officers who interviewed the clerk originally showed him photographs only of appellant.

The evidence on this score is that the officers at Sergeant Gaiser's direction went to the Alco store and contacted the clerk in charge of the auto supply and sporting goods section of the store, Wesley Warren. The officers showed appellant's photograph to Warren and asked him whether or not he recognized the person depicted. Warren responded affirmatively, stating that the person had been in the store on several occasions and had made several purchases, including that of a .22 Magnum. Prior to showing Warren the photographs, the officers had told him only that they were on a homicide investigation.

Appellant's complaint is obviously without merit. Cases involving the display of a photograph of one person to a crime victim or eyewitness are inapposite. In that situation the person to whom the photograph is displayed is aware that the police are seeking the perpetrator of the crime and the danger is that the person to whom the single photograph is displayed may be influenced by his belief that the police think that the person depicted was the offender. Here, according to the evidence, Warren was told only that the police were investigating a homicide. He did not know whether the photograph depicted a suspect or the victim. He immediately recognized the person as one who had been a customer in the store on several occasions. Warren testified at the trial that, prior to the purchase of the pistol, appellant had been in the store and had inquired about the weapon as it appeared in a display case. On a later visit to the store, appellant paid for the pistol, ostensibly purchased by his female companion. Warren also testified to the distinctive attire of appellant in the store, including his wearing of black leather gloves, a factor noted by several witnesses who saw appellant in the vicinity of the 7-Eleven store on the day of the murders.

There can be no doubt that the circumstances adequately demonstrate that Warren had an independent basis for his identification of appellant and that his identification was not the product of a suggestive photographic display by police. See *State v. Garrett*, 518 S.W.2d 97, 99[2, 3] (Mo.App. 1974).

Appellant's final complaint is to the admission of testimony by Sergeant Gaiser concerning clothing seized in the execution of the search warrant for appellant's apartment. On cross-examination of the witness, defense counsel asked him whether or not specific, described items of clothing, a brown and khaki shirt and a brown or green checked sport outfit, had been seized. The officer replied affirmatively. On further cross-examination, the officer stated that he "partially" left out in his return of the search warrant some items that were seized.

After redirect examination, defense counsel moved for a mistrial on the grounds that Sergeant Gaiser " * * * testified to the effect that he illegally seized items of clothing from the apartment of the defendant * * * and purposely failed to report the seizure of them on the return of the warrant * * *. The counsel for the defendant * * * for four years has never been informed or advised that such a seizure was made." The court declined to declare a mistrial, pointing out that defense counsel had adduced the testimony. However, at the request of defense counsel, the court did instruct the jury to disregard the testimony regarding the seizure of the clothing.

However, the matter did not stop there. Following the passing of some exhibits to the jury, the prosecutor advised the court that Sergeant Gaiser wanted to clarify the clothing matter. Over the objection of defense counsel, the officer was recalled and testified that clothing which he seized was in a Macy's bag and that on the search warrant return he merely listed a Macy's bag, without detailing its contents. He stated that he had had little sleep for 48 hours and simply took a short cut in order to save some time.

On this appeal, appellant complains that the trial court erred in failing to declare a mistrial on the basis of Gaiser's cross-examination testimony about the clothing, asserting that, since the item had not been mentioned on the search warrant return or disclosed pursuant to appellant's request for discovery, the defense was surprised by the testimony regarding seizure of clothing similar to that observed by two witnesses as defendant was wearing when they saw him in the vicinity of the 7-Eleven store.

Basically, appellant's position is that counsel, relying upon the absence of reference to clothing in the search warrant return and in the response to his discovery request, was trying to show that no clothing of the description allegedly worn by appellant had been found, thereby weakening the state's identification evidence, and that the unexpected testimony of the offi-

cer destroyed that effort and resulted in testimony prejudicial to the defendant.

In the trial court, defense counsel made incidental reference to failure on the part of the state to disclose in response to his discovery request, but the record in no manner shows what the response of the state was and appellant's assertions of non-disclosure are not self-proving.

 The primary reliance in the trial court was upon the absence of the clothing from the search warrant return. Such failure, however, would not have precluded the admission in evidence of such items. 68 Am.Jur.2d Searches and Seizures, § 83, p. 738 (1973). The defendant having adduced the evidence is in no position to demand a mistrial on that basis and the trial court's ruling was not error.

As an alternative appellant asserts that Sergeant Gaiser's testimony that he seized clothing was perjured and that the state knowingly made use of such perjured testimony. Appellant's motion for new trial alleged that the trial court erred in failing to grant a mistrial on the basis of Gaiser's testimony or in failing to strike such testimony because, among other reasons, the officer was permitted to make a "self-serving, perjured statement as to his reason for not listing the items he testified to seizing on the return of the search warrant * * *." That, of course, is not the ground now asserted for relief. The motion for new trial did not charge that the state knowingly made use of perjured testimony and the record discloses no effort to demonstrate to the trial court that the officer's testimony was perjured.

However, assuming that the claim of error has been preserved or at least that the plain error rule might be relied upon, there is no demonstrated basis for relief. For proof that the officer's testimony was perjured, appellant relies primarily upon the same witness's testimony at the prior trial that he seized no clothing on the execution of the search warrant. However, the witness's contradictory testimony was not proof of perjury. *Loveless v. Locke Dis-*tributing Co.*, 313 S.W.2d 24, 31[6] (Mo. 1958); *Tyler v. State*, 501 S.W.2d 189, 191[3, 4] (Mo.App.1973). The testimony of the police chemist who accompanied Gaiser on the search that he had no "recollection" of the presence of clothing in the Macy's bag does not establish that the officer's testimony at the earlier trial was correct and that his testimony at the second trial was perjured.

Appellant has made no showing that he is entitled to relief on the grounds that his conviction was produced by the state's knowing use of perjured testimony.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.